**In re AL COHEN'S RYE BREAD BAKERY, INC., Debtor.**

**Harold P. BULAN, as Trustee, Plaintiff,**

v.

**NIAGARA MOHAWK POWER CORPORATION, Defendant.**

**Bankruptcy No. 94–12525 B.**
**Adversary No. 95–1254 B.**

United States Bankruptcy Court, W.D. New York.

Nov. 15, 1996.

Goldstein, Navagh, Bulan & Chiari (Harold P. Bulan, of counsel), Buffalo, New York, for Plaintiff.

William C. Grossman, Niagara Mohawk Power Corporation, Buffalo, New York, for Defendant.

CARL L. BUCKI, Bankruptcy Judge.

In New York State, public utilities are required to offer Deferred Payment Agreements to qualified commercial customers who face a termination of service by reason of payment delinquency. The question now at issue is whether such deferred payments satisfy the ordinary course exception to the preference provisions of 11 U.S.C. § 547.

In November 1992, Al Cohen's Rye Bread Bakery, Inc., began to fall behind in payments to its supplier of electricity, Niagara Mohawk Power Corporation. Within a year's time, the arrears had accumulated to the point at which a shutoff of electrical service was imminent. As an alternative to termination, the power company and bakery agreed in late 1993 to a deferred arrangement whereby the bakery would satisfy the accumulated arrears through payment of the additional sum of $1,000 with each regular monthly bill. This arrangement continued for nine months until shortly before creditors filed an involuntary bankruptcy petition against the bakery on September 2, 1994. The bakery having defaulted in opposing the petition, this Court granted an order for relief under Chapter 7 on October 3, 1994.

During the ninety days prior to filing of the involuntary petition, the debtor paid three current bills that Niagara Mohawk Power Corporation had issued. Alleging that each of these payments included the agreed additional amount for application to outstanding arrears, the trustee commenced the present adversary proceeding against the Power Corporation to recover preferences totaling $3,000. The matter now comes before this Court on cross motions for summary judgment.

Section 547 of the Bankruptcy Code defines the trustee's power to recover preferential payments. Subdivision (b) sets forth the basic requirements for a preference, while subdivision (c) establishes exceptions to this avoidance power. For purposes of the present motions, Niagara Mohawk concedes that its payments during the preference period would satisfy the requirements of section 547(b). Rather, the company bases its defense on the ordinary course of business exception of subdivision (c)(2) or, alternatively, the new value exception of subdivision (c)(4).

Subdivision (c)(2) of section 547 provides that a trustee may not avoid an otherwise preferential transfer

to the extent that such transfer was—(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms.

In the present instance, the allegedly preferential transfer was in payment of a debt for the bakery's use of electricity. As required by part A of subdivision (c)(2), therefore, the debt was incurred in the ordinary course of the debtor's business. Similarly, by their conduct over a period of nine months, the bakery and power company had established

an ordinary course of payment activity that would include the remittance and acceptance of the additional sum of $1,000 per month. Thus, as required by part B, the transfer was made in the ordinary course of both the debtor's and the transferee's business affairs. The focus of their dispute is the third condition, whether payment was made according to ordinary business terms.

■ Parts A and B of section 547(c)(2) contain standards that relate subjectively to the conduct of debtor and creditor. In contrast, part C establishes a more objective test, that the payment be made according to those "ordinary business terms" which the applicable business or industry may set. As noted by the Court of Appeals in *In re Roblin Industries,* 78 F.3d 30, 41 (2nd Cir. 1996), part C "requires a creditor to demonstrate that the terms of a payment for which it seeks the protection of the ordinary course of business exception fall within the bounds of ordinary practice of others similarly situated."

Many businesses function within a competitive environment. In such instances, diligent managers will naturally seek those terms which are most likely to enhance profit. Within the give and take of free enterprise, market forces of supply and demand will work to set acceptable standards and norms of operation.[1] For example, if price and quality of a product are comparable, customers will tend to reject those suppliers who would impose unusually onerous conditions for payment, and gravitate toward those who offer more advantageous terms. As noted by Nobel laureate Paul Samuelson in his classic textbook on economics, the economy becomes "a vast system of trial and error, of successive approximation to an equilibrium system of prices and production." Paul A. Samuelson, Economics, 40 (8th ed. 1970). This equilibrium serves to define ordinary business terms, as referenced in section 547(c)(2)(C).

■ In contrast to a competitive environment, a monopolistic market allows a dominant seller to set the price, and through that pricing, to determine the level of demand. Presumably, the monopolist will set a price that is calculated to maximize its profit. Lacking the forces of competition, a monopolistic environment allows a single party to dictate practices which become not so much ordinary, as exclusive. For this reason, the proclivities of a monopolistic enterprise may not necessarily constitute ordinary business terms within the meaning of the Bankruptcy Code.[2]

Utilities are a special type of monopoly. Deriving their authority from the state to operate on an exclusive basis, they must fulfill whatever conditions the state may impose for that exclusivity. These conditions frequently require compliance with regulations that compel particular practices and procedures. As to those activities that are so regulated, the utility is precluded from choosing any other course of action. For utilities, therefore, regulatory mandates will define the scope of ordinary business terms.

The regulations of the New York Department of Public Service provide that prior to any "termination of service for nonpayment of arrears," a utility must advise the customer of its eligibility for a deferred payment arrangement. 16 NYCRR § 13.5(1)(i). Having satisfied the regulation's definition of eligibility, Al Cohen's Rye Bread Bakery, Inc., could properly demand the restructuring of its obligation. The deferred payment arrangement, therefore, constituted an ordinary term of business within the utility industry. Required to accept the payments and to defer its collection activity, Niagara Mohawk Power Corporation has fully estab-

---

1. One of the assumptions of a competitive market is that all firms in the industry produce a homogeneous product. If the products are not homogeneous, the market will establish price differentials to compensate for differences in quality. Kalman J. Cohen & Richard M. Cyert, Theory of the Firm 5, (2nd ed. 1975). In economic language, different terms or conditions of sale are simply grade or quality differences which are compensated for by price differentials.

2. As the Court of Appeals noted in its recent decision in *In re Roblin Industries, Inc.,* 78 F.3d at 43, "the behavior of the parties cannot be sufficient in and of itself to sustain the creditor's burden of proof with respect to ordinary business terms in the industry."

lished the subdivision (c)(2) defense to the preference provisions of section 547.

The trustee contends that the utility's original bill worked to establish the ordinary business terms for the obligation at issue. In its view, the delinquency would necessarily preclude any characterization of a deferred payment as ordinary. The Second Circuit has clearly rejected this position, as stated in *In re Roblin Industries, Inc.*, 78 F.3d at 41–42:

> We decline to adopt a rule that payments made pursuant to debt restructuring agreements, even when the debt is in default, can never be made according to ordinary business terms as a matter of law. That determination is a question of fact that depends on the nature of industry practice in each particular case.... It is not difficult to imagine circumstances where frequent debt rescheduling is ordinary and usual practice within an industry, and creditors operating in such an environment should have the same opportunity to assert the ordinary course of business exception....
>
> To apply properly the § 547(c)(2)(C) standard, "ordinary business terms" must include those terms employed by similarly situated debtors and creditors facing the same or similar problems. If the terms in question are ordinary for industry participants under financial distress, then that is ordinary for the industry.

More than ordinary, the deferred payment arrangement for utility obligations is universally available in New York State for all eligible customers. Such deferred payments, therefore, are necessarily made according to ordinary business terms.

The outcome of this decision fully buttresses one of the primary goals of preference law, to discourage creditors "from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy." H.R.Rep. No. 95–595, at 177 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6138. Indeed, the deferred payment arrangement represents the antithesis of a race to the courthouse. Compelled by regulation to accept the deferred arrangement, the defendant was thereby precluded from otherwise enforcing its rights, either through the pressure of a threatened termination or through appropriate judicial process. To find the occurrence of a preference in this instance would surely penalize the very conduct which the statute seeks to encourage.

Having found that Niagara Mohawk Power Corporation enjoys a valid defense under 11 U.S.C. § 547(c)(2), this Court need not consider the assertion of a defense under subdivision (c)(4). For the reasons stated herein, the defendant's motion for summary judgment is granted. Accordingly, the plaintiff's cross motion for summary judgment is denied.

So ordered.